IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELANIE DAWN SHY, | ) | CASE NO. 1:14 CV 2544 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Melanie Dawn Shy under 42 U.S.C. § 405(g) for judicial
review of the final decision of the Commissioner of Social Security denying her applications
for disability insurance benefits and supplemental security income.[2] The Commissioner has
answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 15. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 7.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Shy, who was 49 years old at the time of the administrative hearing,[10] graduated from high school and her employment history consists of working as a janitor for Ohio State University, and as a fast food worker at Long John Silvers.[11]

The ALJ, whose decision became the final decision of the Commissioner, found that Shy had the following severe impairments: osteoarthrosis, right shoulder impingement, affective disorder, schizoaffective disorder and posttraumatic stress disorder.[12]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Shy's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567© and 416.967©, with restrictions. Specifically, she can lift and carry no more than 50 pounds occasionally and 25 pounds

---

[6] ECF # 13.

[7] ECF # 16 (Shy's brief); ECF # 22 (Commissioner's brief).

[8] ECF # 17 at 3-10 (Shy's charts); ECF # 22-1 (Commissioner's charts).

[9] ECF # 17 at 1-2 (Shy's fact sheet).

[10] Transcript ("Tr.") at 34.

[11] Tr. 42 and 51.

[12] Tr. at 13.

frequently. In an eight-hour workday, she can stand and/or walk for six hours and sit for six hours, with normal breaks. She can frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch and crawl. She is limited to occasional reaching overhead with the bilateral upper extremities. She is limited to non-complex tasks, such as tasks which can be learned within 30 days. She is limited to low-stress tasks, such as tasks that do not require high production quotas, strict time requirements, work that is paid at a piece rate, or tasks that involve arbitration, negotiation or confrontation. She is limited to tasks that involve superficial interaction with co-workers and the public, such as interaction of a brief duration and for a specific purpose. In addition, the claimant will be off task five percent of the time.[13]

Based on that RFC, the ALJ found Shy capable of her past relevant work as a janitor as it is generally performed[14] but that she cannot perform her past relevant work as a janitor as she actually performed that job because she lifted up to 50 pounds on a frequent basis, which is beyond the medium exertional level demands. Therefore, the ALJ found Shy not under a disability.[15]

## C.    Issues on judicial review and decision

Shy asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Shy presents the following issues for judicial review:

- The ALJ failed to provide good/specific/supported" reasons for discounting the opinions of the treating and examining doctors in this case. The ALJ 's mental RFC is deficient as a matter of law even assuming the least favorable opinion of record, that of the

---

[13] *Id.* at 16.

[14] *Id.* at 22.

[15] *Id.* at 22, 23.

nonexamining consultant, and this error is not harmless because it undermines the vocational expert's testimony. Similarly, the ALJ's physical RFC is also deficient based on improper rejection of SSA's examining physicians opinions, and because the ALJ never considered the effect of plaintiff's obesity, as required by Social Security Ruling 02-1p.[16]

•       The ALJ erred by failing to consider Ms. Shy's strong work history when determining her RFC and assessing her credibility, violating clear Agency regulations and policy.[17]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

### A.      Standards of review

### 1.      *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant

---

[16] ECF # 16 at 10.

[17] *Id.* at 21.

-4-

evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-5-

objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such

---

[21] 20 C.F.R. § 404.1527(d)(2).

[22] *Id.*

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a

---

[28] *Id.* at 535.

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

-7-

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

[39] *Rogers* 586 F.3d at 242.

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary

---

[42] *Gayheart*, 710 F.3d at 376.

[43] *Id.*

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

[53] *Blakley*, 581 F.3d at 406-07.

-10-

physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

-11-

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree

---

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

[60] *Id.*

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id.* at 409-10.

-12-

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

**B.    Application of standards**

This case again presents an issue as to how an allegedly treating source opinion was evaluated and weighed.

The opinion at issue is that of Dr. Gary Wilkes, M.D., a psychiatrist. The record shows that Wilkes saw Shy once, in July, 2013, for about fifteen minutes to evaluate whether to continue the medication dosage prescribed by Dr. Daniel Schweid, M.D.,[69] a psychiatrist who had been treating Shy since April 8, 2013,[70] and who had adjusted Shy's medications in June of 2013[71] and then saw

---

[66] *Id.* at 410.

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[68] *Id.* at 940.

[69] Tr. at 501.

[70] *Id*. at 469-99.

[71] *Id*. at 503.

her again on June 14, 2013.[72] Exactly one week after Dr. Wilkes' single visit with Shy, he completed a mental functional assessment form supplied by Shy's counsel.[73]

In that assessment, Dr. Wilkes opined that Shy had moderate restrictions in daily living and social functioning, as well as marked limitations in concentration, persistence and pace, and episodes of deterioration or decompensation.[74] He further found that her work related limitations included an inability to interact with supervisors or the public, and to respond to even routine work pressures and changes.[75]

The ALJ assigned these opinions "some weight ... but not full weight,"determining that Wilkes' conclusions should be discounted for four reasons:

(1) he had seen Shy only once before rendering an opinion;

(2) the opinion was based on Shy's subjective complaints;

(3) the opinions are internally inconsistent in finding a marked limitation in concentration, persistence and pace, while also finding no more than a moderate limitation in her ability to understand, remember and carry out simple and detailed instructions; and

(4) the opinion as to Shy's ability to interact with others and as concerns her activities of daily life was inconsistent with inconsistent with the evidence as a whole, particularly as the ALJ discussed early in the opinion where he evaluated the B criteria of Listings 12.04 and 12.06.[76]

---

[72] *Id*. at 502.

[73] *Id.* at 489-94.

[74] *Id*. at 491, 494.

[75] *Id*. at 493-94.

[76] *Id*. at 19.

-14-

In that discussion of the B criteria, the ALJ noted that Shy had only mild restrictions in activities of daily living, pointing specifically, with citations to the record, to her hygiene and grooming, ability to prepare her own meals, housekeeping abilities, use of public transit, and managing her finances.[77] The ALJ specifically stated that although Dr. Wilkes' opinion found moderate restrictions in activities of daily living, the evidence cited by the ALJ, often from Shy's own testimony, plus the opinion of the state agency reviewers supported the finding that her restriction in this area was no more than mild.[78]

Similarly, the ALJ reviewed in some detail Shy's limitations as to social functioning. Here, noted that despite Shy's statement that she does not get along well with others, the evidence of record shows that he is able to maintain family relationships and engage in superficial social relationships involved in shopping and taking public transit.[79] He also specifically cited to record evidence that treating mental health professionals have described Shy as cooperative and pleasant during office sessions.[80] On that basis, and consistent with the opinions of the state agency reviewers who opined that Shy had no more than moderate difficulties with social functioning, the ALJ adopted that finding and rejected Dr. Wilkes' opinion of marked limitations in this area as "inconsistent with the claimant's current social functioning."[81]

----

[77] *Id*. at 15 (citing record).

[78] *Id*.

[79] *Id*. (citing record).

[80] *Id*.

[81] *Id*.

-15-

As Shy appears to concede,[82] Dr. Wilkes, who examined Shy only once before issuing an opinion as to her functional limitations, is not a treating source whose opinion is presumed to be entitled to controlling weight. I recently discussed this issue at some length in *Mitchell v. Commissioner of Social Security:*[83]

> Although the precise words of the regulations make clear that a determination of whether a source is a "treating source' may not be reduced to simply calculating the number of visits the claimant made to the source, courts have suggested some guidelines in that regard.[84] First, the Supreme Court in *Black & Decker Disability Plan v. Nord* [85] observed in general terms that "the assumption that the opinion of a treating physician warrants greater credit than the opinions of [other sources] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration.[86] The Sixth Circuit in *Helm v. Commissioner of Social Security*[87] also expressed a similar observation in a slightly different context when it noted that "it is questionable whether a physician who examines a patient only three times over a four month period is a treating source–as opposed to a non-treating examining source."[88] In a somewhat more definitive statement, the Sixth Circuit in *Yamin v. Commissioner of Social Security*[89] found that a doctor who examined the claimant on only two occasions did not have a long-term overview of the claimant's condition and so was not a treating source[90]

---

[82] ECF # 16 at 12. "Even accepting that Dr. Wilkes cannot be considered a 'treating source' because he had only examined Ms. Shy once before he issued his opinion ...."

[83] *Mitchell v. Commissioner of Social Security,* 2015 WL 3454743 (N.D. Ohio May 29, 2015).

[84] *Id.* at 6

[85] *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

[86] *Id.* at 832.

[87] *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997 (6th Cir. 2011).

[88] *Id*. at 1000 n. 3.

[89] *Yamin v. Comm'r of Soc. Sec.,* 67 F. App'x 883 (6th Cir. 2003).

[90] *Id.*

As I observed in *Montana v. Commissioner of Social Security,*[91] the regulations direct that the district court look to the accepted medical practice for the type of treatment under review in determining whether a source is a treating source.[92] Thus, where the practice in the field of psychiatry may involve a physician personally seeing a patient only infrequently to prescribe medications on the reports of others, such a relationship may constitute a treating relationship under the regulatory rubric stating that the treating relationship is to be determined by the frequency of contact required by the patient's condition or evaluation needed in the context of the patient's impairment.[93]

That said, there is nothing to establish Dr. Wilkes as a treating source. Shy saw him only once for a few minutes at a time when she was under the care of Dr. Schweid, for the apparent purpose of determining whether she needed to have the dosage adjusted of the medications earlier prescribed by Dr. Schweid. As such, there is no "ongoing treatment relationship" with Dr. Wilkes, which is the touchstone of treating source status.

Shy further argues that although Dr. Wilkes may not be a treating source, and so entitled to a presumption of controlling weight, he at least examined Shy and so his opinion should receive greater weight than the opinions of the state agency reviewing sources who did not examine her.[94] While as a general rule, all other things being equal, the regulations do favor greater weight for

---

[91] *Montana v. Commissioner of Social Security*, 2013 WL 6903764 (N.D. Ohio Dec. 31, 2013)(Report and Recommendation adopted by district court).

[92] *Id*. at *8 (citations omitted).

[93] *Id*. (citations omitted).

[94] ECF # 16 at 12.

-17-

examining sources over reviewing ones,[95] that regulation is not an automatic, permanent trump card for any opinion from an examining source when considered together with an opinion from a reviewing one. Rather, in such a situation, the ALJ may give greater weight to the opinion of the reviewing source. [96]

> As I discussed in some detail in *Gordon v. Commissioner of Social Security*:
>
> That said, while it is true that the opinion of an examining, non treating source is generally entitled to more weight than that of a reviewing source, it is not true, as Gordon seems to suggest, that it is *per se* so erroneous for an ALJ to give greater weight to the opinion of a reviewing source over that given to a non-treating, examining source.[97]  As the Sixth Circuit clearly teaches, any medical opinion in the record, even that of a treating source, may be rejected completely, or assigned lesser weight than another opinion, when the source opinion at issue is not well supported by the medical diagnostics, or if it is inconsistent with the other evidence in the record.[98]  Moreover, and of particular relevance here, an ALJ need only make any presumption set forth in *Gayheart v. Commissioner of Social Security*,[99] in cases involving the opinion of a treating source.[100]
>
> Simply put, an ALJ is permitted to credit the opinions of state agency reviewing sources over that of a one-time examining source when the reviewing source opinions are more consistent with the overall record.[101]  And, in making this determination, the ALJ is under no special articulation requirement to explain in detail the relative weights given to the non-treating examining source opinion as

---

[95] *See*, 20 C.F.R. § 404.1527(c)(1).

[96] *Gordon v. Commissioner of Social Security,* 2015 WL 1040180 (N.D. Ohio March 10, 2015).

[97] *Gordon,* 2015 WL 1040180, at * 3 (citations omitted).

[98] 20 C.F.R §§ 404.1527, 416.927, *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010).

[99] *Gayheart,* 710 F.3d 365.

[100] *Norris v. Comm'r of Soc. Sec.,* 461 F. App'x 433 (6th Cir. 2012).

[101] *Id.* at 440 (citing *Ealy*, 594 F.3d at 514-15)

-18-

compared to the opinions of the reviewing sources.[102]  As the Sixth Circuit set out in *Norris*,[103]  "[s]o long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review."

Here, the ALJ more than adequately explained in detail and in the text of the opinion the reasons and justification for the relative weight assigned to the opinions.  The decision to assign greater weight to the opinions of the state agency reviewers over that of the one-time examiner, Dr. Wilkes, fully conforms to the requirements of the regulations and relevant case law and is further supported by substantial evidence, as is set forth more fully above.

As to obesity, that the Commissioner correctly points out that there is no requirement that the ALJ invoke that specific word as a magic talisman to provide proof that it was considered by an ALJ.[104] By crediting the reports of the agency reviewing physicians that explicitly took note of Shy's height and weight, the ALJ sufficiently considered Shy's obesity in formulating the RFC.[105]

Further, as the Commissioner also observes, the ALJ did not err in his discounting of Shy's credibility.[106] An ALJ's findings as the credibility of a claimant are entitled to great deference by

---

[102] *See Gayheart*, 710 F.3d at 376.  Unlike as with a treating physician, "opinions from nontreating and nonexamining sources are never assessed 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency and supportability, but only if a treating source opinion is not deemed controlling. Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion."

[103] *See Norris*, 461 F. App'x 433 at 440.

[104] *See*, ECF # 22 at 20.

[105] *Bledsoe v. Barnhart,* 165 F. App'x 408, 412 (6th Cir. 2008)(citation omitted).

[106] ECF # 22 at 21-22.

the reviewing court,[107] and will be disturbed only where the ALJ's finding was not reasonable or supported by substantial evidence.[108]

Here, Shy disputes the ALJ's handling of her testimony concerning her work history.[109] In fact, the ALJ did not ignore Shy's work history, but noted that she was able to work steadily for 13 years prior to the alleged onset date because she was compliant with her medications and had an easier time working when she became familiar with her co-workers.[110] The ALJ then reasonably concluded that substantial evidence supported a finding that Shy is capable of working when she takes her medication.[111]

Shy's argument that her prior good work history should have been viewed as a reason to now credit her complaints of a disabling impairment[112] rests on an assertion that the ALJ should have interpreted her prior work history in a different way, and not that he failed to account for it. To the degree that the ALJ noted her good work history and interpreted it as he did was reasonable, even if it was not as Shy would have wished.

---

[107] *Walters v. Commissioner of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997).

[108] *Jones v. Commissioner of Social Security,* 336 F.3d 469, 476 (6th Cir. 2003).

[109] ECF # 21-22.

[110] Tr. at 21 (citing record).

[111] *Id.*

[112] ECF # 21 ("it is unlikely that someone would trade in their productive, and lucrative, work career for the far less lucrative 'career' of receiving disability benefits").

-20-

## Conclusion

Substantial evidence supports the finding of the Commissioner that Shy had no disability. The denial of Shy's applications is affirmed.

IT IS SO ORDERED.


Dated: February 29, 2016                          s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge